**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Roberto Rosa-Martinez<br><br>Defendant. | Crim. No. 24-257 (GMM) |

## OPINION AND ORDER

Pending before the Court is the Defendant Roberto Rosa-Martínez's ("Defendant") *Motion Requesting Review of Detention Order and Request for De Novo Detention Hearing* ("Motion for De Novo Detention Hearing"). (Docket No. 17). The United States of America ("Government") opposed the Motion for De Novo Detention Hearing. (Docket No. 20). For the reasons that follow, Defendant shall remain detained without bail pending trial.

### I.   BACKGROUND

On August 1, 2024, a grand jury sitting in the District of Puerto Rico returned a one count Indictment against Defendant for Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e). *See* (Docket No. 3).

On August 15, 2024, the U.S. Probation Office submitted Defendant's Pretrial Services Report. It posited that "there are conditions or combination of conditions to reasonably assure either the defendant's appearance in court or the safety of the

Crim. No. 24-257 (GMM)
Page -2-

community." (Docket No. 12 at 6). Specifically, the U.S. Probation

Office recommended the following conditions:

(1)   The defendant must not violate federal, state, or local
      law while on release;

(2)   The defendant must cooperate in the collection of a
      DNA sample if it is authorized by 42 U.S.C. Section
      14135a;

(3)   The defendant must advise the court or the pretrial
      service office or supervising officer in writing
      before making any change of residence or telephone
      number;

(4)   The defendant must appear in court as required and, if
      convicted, must surrender as directed to serve a
      sentence that the court may impose;

(5)   The defendant executes an unsecured bond binding the
      defendant to pay the United States the sum of $10,000
      dollars in the event of a failure to appear as required
      or to surrender as directed for service of any sentence
      imposed.

(6)   The defendant shall:
      a. Submit to supervision by and report for
         supervision to the U.S. Probation Office.
      b. Continue or actively seek employment.
      c. Maintain or start an education program.
      d. Surrender any passport to the U.S. Probation
         Office.
      e. Not obtain a passport or other international
         travel document.
      f. Abide by the following restrictions on
         personal association, place of abode, or
         travel: **Shall reside at the address of record;**
         shall not leave the jurisdiction of this
         District without first obtaining written
         permission from the Court.

g. Avoid all contact directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution.

h. Undergo medical or psychiatric treatment if deemed necessary by the U.S.P.O.

i. Refrain from possessing a firearm, destructive device, or other dangerous weapons.

j. Refrain from any excessive use of alcohol.

k. Refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. Section 802, unless prescribed by a licensed medical practitioner.

l. Participate in one of the following location restriction programs and comply with its requirements as directed: Home Incarceration: You are restricted to your residence at all times, except for medical needs or treatment, religious services, and court appearances pre-approved by the U.S. Probation Officer.

m. Submit to location monitoring technology and comply as directed: Location monitoring technology as directed by the pretrial services or supervising officer;

n. You must pay all or part of the cost of the program based on your ability to pay as determined by the U.S. Probation Office or Supervising Officer.

o. Report as soon as possible, to the U.S. Probation Office or Supervising Officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

p. Exception: The Chief U.S. Probation Officer or his designee, may authorize temporary changes of address and overseas travels to the mainland U.S. only, not exceeding 15 calendar days, provided the U.S. Attorney has no objection to it. If objected, request will have to made in writing to the Court.

q. Shall not enter any airport or pier with the exception stated above.

Crim. No. 24-257 (GMM)
Page -4-


*See* (*id.* at 6-7). Furthermore, the U.S. Probation Office recommended the following special conditions:

> 1. No unsupervised contact with anyone under the age of 18.
> 2. The defendant must participate in specialized treatment for defendants charged with a sex offense.
> 3. Comply with prohibitions on contact with victim(s) of the offense.
> 4. Comply with prohibitions on contact with any minor.
> 5. No access to any device with internet access. (Computers, laptops, cellphones, tablets, Smart TV).
> 6. Comply with Requirement/Restriction to not possess any form of Pornographic Material.

(*Id.* at 7).

On August 16, 2024, U.S. Magistrate Judge Giselle López-Soler ("Magistrate Judge") held a detention hearing where the Government moved for detention and Defendant sought conditions of release. (Docket No. 13). The Court ordered Defendant detained without bail pending trial. (Docket No. 14). In ordering Defendant's detention, the Court set the following reasons: (1) the Government proved "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community"; (2) the "[w]eight of evidence against the defendant is strong"; (3) that the defendant is "[s]ubject to [a] lengthy period of incarceration if convicted"; (4) Defendant sexually assaulted the 13-year-old

daughter of his consensual partner for several years; and (5) the evidence in this case includes a video of Defendant engaging in oral sex with the minor; he sexually assaulted (and video recorded) a minor while in a consensual relationship and residing with the minor's mother, which "tell the Court that Defendant is willing to abuse a position of trust and that there are no conditions that can be fashioned to reasonably assure the safety of that victim or other minors in the community." *See* (Docket No. 14 at 2-3).

On September 3, 2024, Defendant filed his Motion for De Novo Detention Hearing. Therein, Defendant argues that there is clear and convincing evidence that he will not represent a danger to the community, if released. *See* (Docket No. 17 at 8). In this regard, Defendant argues that he has strong family and community ties; that there is evidence that he can abide by the conditions recommended by the U.S. Probation Office; lack of criminal history; employment history; lack of substance abuse history; and resources through the U.S. Probation Office. *See* (id. at 2-3).

On September 11, 2024, the Government filed its *Response to Defendant's Motion for De Novo Detention Hearing* ("Opposition"). (Docket No. 20). There, the Government argues that Defendant is a danger to the community. Notably, the Defendant faces a 15-year mandatory minimum sentence; the Defendant is charged of abusing a child, who in all probability will endure trauma forever; and the

Crim. No. 24-257 (GMM)
Page -6-

weight of the evidence is strong since the phone the Defendant used to produce the child exploitation material revealed an image of a female minor with her legs spread where the Defendant performs oral sex to her. *See* (id. at 6-9).

On October 2, 2024, the Court conducted a *de novo* hearing, at the conclusion of which it maintained the *status quo* to review the record in more detail and make its final determination.

## II.  **LEGAL STANDARD**

A.  Standard of Review for a Detention or Release Order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F.Supp.3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

B.  The Bail Reform Act

1.  Standard of Proof

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156 ("Bail Reform Act"), provides for the pretrial detainment of persons "if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any

person and the community." <u>United States v. Mieses-Casiano</u>, 161 F.Supp.3d 166, 167 (D.P.R. 2016) (*citing* 18 U.S.C. §§ 3142(b) and (e)). To obtain the pretrial detainment, "[t]he government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence." <u>United States v. Vázquez-Cintrón</u>, Criminal No. 19-685 (PAD), 2020 WL 1310540, at *1 (D.P.R. Mar. 17, 2020) (*citing* <u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001); <u>United States v. Gebro</u>, 948 F.2d 1118, 1121 (9th Cir. 1991)). Clear and convincing evidence as to dangerousness is "more than preponderance of the evidence but less than beyond a reasonable doubt." <u>United States v. Acevedo-Ramos</u>, 600 F.Supp. 501, 509 (D.P.R. 1984), *aff'd*, <u>United States v. Acevedo-Ramos</u>, 755 F.2d 203 (1st Cir. 1985).

   2.   <u>Factors the Court must Consider</u>

   To determine if the government has met that burden, the Court must consider certain factors: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release." <u>U.S. Tortora</u>, 922 F.2d 880, 884 (1st Cir. 1990); *see also* 18 U.S.C. § 3142(g).

   3.   The 18 U.S.C. § 3142(e) Presumption

   In cases such as this one, where a defendant is charged with
"an offense involving a minor victim under [18 U.S.C. § 2251],"
the court must presume, "that no condition or combination of
conditions will reasonably assure the appearance of the person as
required and the safety of the community. . ." 18 U.S.C. §
3142(e)(3)(E). A grand jury indictment is sufficient to establish
probable cause for purposes of triggering the presumption. *See*
United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986) ("We
agree with those courts that have held that a grand jury indictment
is sufficient to establish probable cause for the purposes of
triggering the rebuttable presumptions in section 3142(e)."));
United States v. Contreras, 776 F.2d 51, 54-55 (2d Cir. 1985)
("[A]n indictment returned by a duly constituted and unbiased grand
jury satisfies the Constitution as to the existence of probable
cause that the defendant committed the crimes enumerated
therein.").

   Once probable cause is found, the presumption in section
3142(e) imposes on the defendant a burden of production. *See* United
States v. O'Brien, 895 F.2d 810, 815 (1st Cir. 1990). However, the
government "retains the burden of proving that no conditions will
reasonably assure the defendant's appearance" and the safety of
the community. Id.; *see also* United States v. Stone, 608 F.3d 939,

945 (6th Cir. 2010). Although the burden is not heavy, the introduction of such rebuttal evidence does not destroy the presumption and instead continues "to operate as one factor to be considered by the court in determining whether the defendant must be detained." O'Brien, 895 F.2d at 815; see also Stone, 608 F.3d at 945 (classifying defendant's burden of production as "not heavy"). To that extent, judges must keep the presumption in mind as an additional factor to the four listed in Section 3142(g). See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987); see also United States v. Vargas-Reyes, 220 F.Supp.3d 221, 225 (D.P.R. 2016).

## III. DISCUSSION

A.    Presumption in Defendant's Case

In Defendant's case, the presumption that no combination of conditions will reasonably assure his appearance, or the safety of the community applies since Defendant was charged with Production of Child Pornography which violates 18 U.S.C. § 2251(a) and (e). See 18 U.S.C. § 3142(e)(3)(E) ("Section 3142(e)(3)(E)"). Thus, Defendant bears the initial burden of showing that he is not a danger to the community or a flight risk.

In this regard, Defendant proffered that he has strong family and community ties in Puerto Rico. In particular, he has lived all

his life in Bayamón, Puerto Rico, currently lives with his mother and his brother, and has a relationship with his sister. Furthermore, Defendant has child support obligations that he was complying with as of late. The Defendant also proffered that he has no history of non-appearance at court proceedings, no history of foreign travel, and does not possess a valid U.S. Passport. Lastly, Defendant proffers that during the period between the allegations of the Indictment and the date of his arrest, there has been no allegation of him engaging in any criminal conduct. The Court thus finds that Defendant met his initial burden of rebutting the presumption in Section 3142(e)(3)(E).

B.    The Tortora Dangerousness Factors

    The Court now considers the factors set forth in section 3142(g) of the Bail Reform Act and in Tortora, 922 F.2d at 884.

    1.   The Nature and Circumstances of the Offense Charged

    The Government proceeded by factual proffer in support of its position to keep Defendant detained. (Docket Nos. 20; 27). On February 14, 2024, Homeland Security Investigations ("HSI") Special Agent Kevin Romero ("SA") received information from the Puerto Rico Police Bureau ("PRPB") agents that a 13-year-old female minor ("Minor") had been sexually exploited by Defendant, her stepfather, using a cellular device. See (Docket No. 20 at 2). The PRPB told HSI that they had obtained the cellphone that Defendant

Crim. No. 24-257 (GMM)
Page -11-

used to exploit the Minor. *See* (id.). The cellphone used by the Defendant belonged to his wife, the mother of the Minor. *See* (id.).

On February 15, 2024, HSI interviewed the mother of the Minor. *See* (id.). The mother stated that she received a phone call from the father of the Minor, who told her that Defendant had been sexually abusing the Minor and that the Defendant had video recorded the act. *See* (id.). Because the cellphone belonged to the mother of the Minor, she consented to a data extraction and analysis of the cellphone. *See* (id.).

On February 15, 2024, HSI also interviewed the father of the Minor. *See* (Docket No. 20 at 2). The father told HSI that the Minor, while she was staying with her father and her stepmother, confided that Defendant had been sexually abusing her since she was 9. *See* (id.). The Minor said that Defendant video recorded himself having sex with her on a cellphone. *See* (id.).

On February 22, 2024, HSI received the cellphone data extraction report. *See* (id. at 3). HSI found three relevant images. The first image is a picture of the Minor wearing a white T-shirt in a bedroom. *See* (id.). The second image is a picture like the first one but included the naked torso of a male figure. *See* (id.). Both images cut off both of their faces. *See* (Docket No. 20 at 3). The third image depicted the Defendant performing oral sex on the Minor. *See* (id. at 4).

Crim. No. 24-257 (GMM)
Page -12-


On April 29, 2024, HSI interviewed the Minor. *See* (id. at 3). During the interview, the Minor informed that Defendant has been sexually abusing her since she was 9 years old. *See* (id.). The Minor posited that Defendant would abuse her when her mother was away from home, for work, and when Defendant was alone with her. *See* (id.). The abuse took place in her mother and Defendant's bedroom. *See* (id.). The Minor also informed that Defendant had video recorded himself having sex with her on or around December 2023. *See* (Docket No. 20 at 3). The Minor reported that Defendant told her that he was going to sell the video and that he was going to receive $200. *See* (id. at 4). The Minor said that Defendant paid her $20 after they recorded the video. *See* (id.). During her interview, the Minor also identified herself and the Defendant in the images HSI found in the cellphone extracted data. If convicted, Defendant faces a 15-year mandatory minimum term of incarceration of 15 years.

This factor favors detention.

2.  The Weight of Evidence as to Guilt

The weight of the evidence against the Defendant is strong. The Government is in possession of images depicting the Minor being exploited sexually by the Defendant. In addition, the Government proffered that the Minor identified herself and the Defendant in the images. "As the First Circuit has pointed out, it is up to the

Crim. No. 24-257 (GMM)
Page -13-

jury to determine whether the images forming a basis for an indictment depict lascivious exhibition as statutorily defined." United States v. Vargas-Reyes, 220 F.Supp.3d at 228 *citing* United States v. Frabizio, 459 F.3d 80, 85 (1st Cir. 2006). For purposes of bail determination, there is no evidence inconsistent with a finding of guilt. *See* United States v. Gray, 529 F.Supp.2d 177, 181 (D.Mass. 2007)(so noting in rejecting claim that weight of evidence was weak). Accordingly, the weight of the evidence favors detention.

> 3.    The History and Characteristics of Defendant

>> a.   Defendant's Family Ties

Defendant is 39 years of age. (Docket No. 12 at 1). Except for a period of residence at military bases in El Paso, Texas, and Germany related to his father's military service, Defendant has been a lifelong resident of Bayamón, Puerto Rico. *See* (id. at 2). He has a total of four siblings. His brother Joshua Martínez, age 37, has two adolescent children (ages 14 and 16) that reside in Puerto Rico. *See* (id. at 1). His sister Yashira Martínez, age 37, has two children (ages 10 and 12). She resides in Bayamón, Puerto Rico.

As to his marital history, Defendant has been single since February 2024. *See* (id. at 2). Prior to said date, Defendant sustained an eight-year-relationship with Yaritza Pérez-Rodríguez,

Crim. No. 24-257 (GMM)
Page -14-

mother of the Minor. *See* (id. at 2). Defendant lived with the Minor
and her mother at Bayamón, Puerto Rico. *See* (id. at 2). Given the
case against Defendant, he had to move to his mother's residence,
which is his current address of record, and just 15 minutes away
from Ms. Pérez-Rodríguez's address. *See* (Docket No. 12 at 2).

Before sustaining his relationship with Ms. Pérez-Rodríguez,
on unspecified dates, he had two other relationships. *See* (id. at
2). Defendant procreated five children in those two relationships.
*See* (id.). His two eldest sons are 16 and 18 years old and are
residents of Jacksonville, Florida. *See* (id.). His other three
children (ages 10, 11, and 12) are residents of Bayamón, Puerto
Rico. *See* (id.). Defendant's child support obligations are
approximately, $505.69 in monthly payments, including two payment
plans for arrearages totaling $18,460. *See* (id.).

> b.  Defendant's Criminal History, Drug Use, and Mental
>     Health

Defendant has no criminal history, no history of substance
abuse, nor any history of mental disorders. *See* (Docket No. 12 at
4-5).

> c.  Employment History, Financial Resources, and
>     Assets

Before his arrest, Defendant was employed as a handyman
earning $11.82 an hour. *See* (id. at 3). Before then, he worked in
a tint shop from 2011 to 2018; as a valet from 2006 to 2010; and

Crim. No. 24-257 (GMM)
Page -15-

for a discount store from 2003 to 2006. *See* (id.). Regarding his financial resources and assets, Defendant has a monthly cash flow of $1,333.11. *See* (id. at 3-4). However, Defendant has an estimated net worth of ($42,427). *See* (id. at 3).

As such, the history and characteristics of Defendant favor release due to his strong family ties and financial obligations to them.  He also has no criminal history.


   4.   The Nature and Gravity of the Danger Posed to the
        Community by Defendant's Release

The fourth and final factor weighs in favor of detention. Foremost, "crimes involving child pornography. . .represent danger to the community." United States v. Ramos-Meléndez, Crim. No. 24-77 (RAM), 2024 WL 1430783, at *6 (D.P.R. April 3, 2024), aff'd, Crim No. 24-1382 (1st Cir. June 4, 2024). Indeed, when enacting the Adam Walsh Child Protection and Safety Act of 2006, Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Id. (*quoting* Pub. L. No. 104-208 § 121, 110 Stat. 3009, 3009-26 (1996) (codified as amended at 18 U.S.C. § 251)); *see also* United States v. Gall, Crim. No. 13-1266, 2013 WL 12192313, at *1 (D.P.R. Nov. 6, 2013).

While the crime the Defendant is accused of is not in and of itself dispositive of the decision to afford him conditions of release, the specifics of his offense are grossly troubling. *See* United States v. Vargas-Reyes, 220 F.Supp.3d 22 at 229. (The Government's request to revoke the U.S. Magistrate Judge's release order, and that defendant be detained pending trial was granted in child pornography case). The Defendant is accused of committing the instant offense by sexually exploiting the Minor, who lived with him and her mother. The evidence proffered suggests that Defendant did so, for over four years, by abusing a position of trust and authority afforded to him by the mother of the Minor whenever she was out of the house. Defendant allegedly sexualized the Minor to the degree she was willing to accept $20 in exchange of Defendant selling the video of him giving oral sex to the Minor. It was not until the Minor had the courage to speak to her father about Defendant's exploits that his abuse ended.

Regardless, Defendant argues that the conditions of release proposed by the U.S. Probation Officer would reasonably assure the safety of the community or any person. *See* (Docket No. 17 at 2). The Court disagrees, given the evidence presented, Defendant's release would pose a significant danger to children in the community. United States v. Burdette, 813 F.Supp.2d 1, 4 (D.D.C. 2011) (so finding in case of a defendant charged with attempted

production of child pornography); United States v. Dávila-Sánchez,
2006 WL 1236776, *1-2 (D.P.R. May 5, 2006 (concluding that if
released, defendant accused of possession of child pornography and
production of such material would pose a grave danger to children,
including the victim in the case).

During the *de novo* hearing, Defendant requested that the
Court adopt the conditions set forth by the U.S. Probation Officer,
but that the Court consider home detention instead of home
incarceration so that Defendant can be employed and fulfill his
child support obligations. Furthermore, Defendant argued that his
sister can serve as his third-party custodian if the Court were to
impose such condition in addition to the location monitoring. The
Court finds that home detention or incarceration, at his mother's
residence, paired with location monitoring does not reasonably
assure the safety of the community. Imposing a third-party
custodian won't appease the Court either.

First, location monitoring cannot guarantee that Defendant
will be supervised when he is in contact with minors. *See* Ramos-
Meléndez, 2024 WL 1430783 at *7 ("as to electronic monitoring,
that technology reveals where a defendant is, but not who they are
with.") (*citing* United States v. Whitty, 2006 WL 980754, at *2 (D.
Me. 2006); United States v. Chiaradio, 2009 WL 10668415, at *2
(D.R.I. 2009)). This is especially true when Defendant has four

underage nephews who would conceivably visit their grandmother's residence. Defendant argued during the *de novo* hearing that the nephews would not be brought to their grandmother's residence in any circumstance, but the Court would have to rely on the family's self-policing.

Second, even assuming *arguendo* that location monitoring would ensure that Defendant is not left unattended with minors, the U.S. Probation Office would have limited ability to ensure that Defendant has no access to devices with internet capabilities. Simply put, "internet-capable devices are ubiquitous in our society." *See* United States v. Brugnoli-Baskin, Crim. No. 22-499, 2022 WL 16636429, at *5 (W.D. Wash. Nov. 2, 2022) (*citing* United States v. Hir, 517 F.3d 1081 (9th Cir. 2008); United States v. Aiad-Toss, No. 4:19-CR-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) (although location monitoring "may offer useful information about where [the defendant] is, it would provide little useful information about what he is doing," and "[t]he ready accessibility of smart phones and digital communication devices would make it all too easy for him to commit the same types of crime(s) that he accused of committing with other young, vulnerable girls."). This is especially concerning when Defendant would be residing with his mother, during home detention or incarceration, who in all probability has devices with internet access. Likewise,

Crim. No. 24-257 (GMM)
Page -19-

if Defendant is allowed to work while on home detention, nothing bars Defendant from acquiring a device with internet capabilities while at work from a co-worker or when someone visit's the mother's residence. After all, the Court is mindful that the cellular device that Defendant used to record the Minor belonged to his then-romantic partner, which underscores Defendant's willingness to use the property of another to exploit minors.

Third, designating his sister as the third-party custodian will not alleviate the Court's concerns. Defendant's sister lives in a separate residence and works as a teacher's assistant. Thus, the Court is not confident that she can faithfully and consistently assure Defendant's compliance with conditions of release.

Fourth, although extensive and strict, the conditions of release proposed by the U.S. Probation Office have an "Achilles' heel": "virtually all of them hinge on the defendant's [and his family's] good faith compliance." _Tortora_, 922 F.2d at 886; _see also_ _Hir_, 517 F.3d at 1092; _Ramons-Meléndez_, 2024 WL 1430783, at *7. But Defendant argues that he is capable of abiding by the conditions of release. _See_ (Docket No. 17 at 9). Particularly, he proffered that the allegations of the offense took place in December 2023. Criminal charges were filed against Defendant eight months later, on August 1, 2024. During that period, there is no allegation that Defendant engaged in any criminal conduct towards

the Minor, or any other person in the community. *See* (id.). Be that as it may, the Defendant acknowledged that he moved out of the residence where he lived with the Minor because of the allegations before the Court and that there was a restraining order against him. *See* (id. at 10). Furthermore, eight months of "compliance" with the law does not outweigh Defendant's presumptive pattern of abuse of trust and authority for over four years, which raises serious concerns that he cannot be trusted to adhere to the conditions of release proposed by him or the U.S. Probation Office. In all, three of the four Tortora factors tilt in favor of detention, which leads the Court to conclude that Defendant poses a clear risk to the safety of the community if he were to be released.

C.    Defendant's Risk of Flight

Because the Court concludes that Defendant poses a serious threat to the safety of the community if he were to be released, the Court does not need to reach whether Defendant poses a flight risk.

IV.   **CONCLUSION**

After carefully considering the parties' proffers, as well as the available range of release conditions, the Court concludes that the Government has shown by clear and convincing evidence

**Crim. No. 24-257 (GMM)**
**Page -21-**

that no condition or combination of conditions will assure the safety of the community if Defendant were to be released. The factors set forth in section 3142(g) of the Bail Reform Act and in <u>Tortora</u>, 922 F.2d at 884 favor and support detention. Therefore, the *Order of Detention Pending Trial* at Docket No. 14 stands. Defendant will remain detained without bail pending trial.

     IT IS SO ORDERED.

     In San Juan, Puerto Rico, October 7, 2024.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE